UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

| | |
|---|---|
| BRUCE R. MOILANEN, # 235252, ) | |
| ) | |
| Plaintiff, ) | Case No. 1:10-cv-1293 |
| ) | |
| v. ) | Honorable Robert Holmes Bell |
| ) | |
| ROOSEVELT SHERROD, et al., ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Defendants. ) | |
| _____) | |

This is a civil rights action brought *pro se* by a state prisoner under 42 U.S.C. § 1983. This lawsuit arises out of plaintiff's December 4, 2008 transfer from the Earnest C. Brooks Correctional Facility (LRF) to another Michigan prison. The defendants are LRF Corrections Officer Roosevelt Sherrod and Resident Unit Manager (RUM) Roger Smead. Plaintiff alleges that defendants violated his First Amendment rights by transferring him in retaliation for his protected activity of filing Grievance No. LRF-08-11-01335-17.[1] Plaintiff sues defendants in their individual and official capacities and seeks damages and declaratory and injunctive relief.

The matter is before the court on defendants' July 25, 2011 motion for summary judgment. (docket # 9). Plaintiff has filed his response. (docket # 28). For the reasons set forth herein, I recommend that plaintiff's requests for declaratory and injunctive relief be dismissed as moot. I recommend that plaintiff's claims for damages against defendants in their official capacities be dismissed with prejudice because they are barred by Eleventh Amendment immunity. I further

---

[1] All other claims were dismissed on May 17, 2011. (docket #s 5, 6).

recommend that defendants' motion for summary judgment be granted and judgment be entered in defendants' favor on all plaintiff's claims for damages against defendants in their individual capacities.

### **Applicable Standards**

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Pahssen v. Merrill Cmty. Sch. Dist.*, 668 F.3d 356, 362 (6th Cir. 2012). The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Pittman v. Cuyahoga County Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). "The court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3). The court must draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Adams v. Hanson*, 656 F.3d 397, 401 (6th Cir. 2011).

A party asserting that a fact cannot be genuinely disputed must support the assertion as specified in Rule 56(c)(1). FED. R. CIV. P. 56(c)(1). Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings. FED. R. CIV. P. 56(e)(2), (3); *see Bozung v. Rawson*, 439 F. App'x 513, 518-19 (6th

Cir. 2011). The motion for summary judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1990). "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [non-movant].'" *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Anderson*, 477 U.S. at 252); *see Donald v. Sybra, Inc.*, 667 F.3d 757, 760-61 (6th Cir. 2012).

**Proposed Findings of Fact**

Plaintiff is an inmate in the custody of the Michigan Department of Corrections serving a non-parolable life sentence for first-degree murder. He was an inmate at the Earnest C. Brooks Correctional Facility (LRF) during the period at issue, from November 18, 2008, through December 4, 2008. Roosevelt Sherrod is an LRF corrections officer. Roger Smead was a resident unit manager (RUM) at LRF, but is now retired.

On November 18, 2008, plaintiff filed Grievance No. LRF-08-11-01335-17I against Corrections Officer Sherrod, Probationary Officer Devries, and Librarian Harris complaining that the prison's librarian had allowed corrections officers access to the most recent issues of Jet Magazine, and that when plaintiff voiced his objection, Ms. Harris told him to shut up:

> On 11/14/08, A.M., shift LRF Library, C/O Sherrod and Probationary Officer L. DeVries came into the library and made [a] request of Ms. Harris for the most recent issues of Jet Magazine. The magazine had yet to be inventoried or stamped. No prisoners had seen or read these publications yet. When I brought this to the attention of staff Harris, Sherrod and Devries, I was told by Ms. Harris to "shut up." I stated, MDOC staff are not to read non-work related materials on a duty assignment. Ms. Harris, "there is no policy against reading at work." Per Ms. Harris, I gave the magazines to C/O Sherrod and Probationary Officer DeVries. It is dereliction of duty for these officers to be reading PBF magazines on assignment. It is dereliction of duty to request these magazines be given to officers for reading. It is a violation of the policy for humane treatment of prisoners to tell me to "shut

>up" when addressing issues of policy violation with any MDOC staff. This may also be a violation of the policy against discrimination, as I was a "white" prisoner questioning the errant action of two senior staff who are "black." Further, taking of magazines for the purpose of reading on the job is a poor example to be setting for probationary employees. All of the above was witnessed by no less than 15 prisoners in the Library at the time of the occurrence. Remedies:  An apology from staff in front of prisoners attending Library, as I was told to "shut up" in front of an open library; 2. If staff is allowed to read materials purchased by the PBF they should have to pay half of the subscription rates; 3. Proper staff sanctions for dereliction of duty pursuant to the progressive disciplinary policy.

(docket # 1-1, ID# 11; docket # 28-1, ID# 221).

Plaintiff states that he had two encounters with Officer Sherrod during which Sherrod mentioned this grievance:

> [15.]  On or about November 24, 2008, while exiting the chow hall I was stopped by C/O Sherrod, and told "you better sign off on that grievance you filed on me, if you like it here."
>
> 16.  I said, "we have nothing to talk about."
>
> 17.  On November 29, 2008, while on morning "back 40 yard" I was once again stopped by C/O Sherrod, and told, "you really want to drop that complaint, staff sticks together."

(Plf. Decl. ¶¶ 15-17, docket # 28-2, ID# 232; *see* Kevin King Decl. ¶¶ 2-4, docket # 28-2, ID# 233; Keith Forth Decl. ¶¶ 2-5, docket # 28-2, ID# 234).

On December 2, 2008, Smead was notified that plaintiff was to be transferred to an alternate level II facility. (Smead Aff. ¶ 6). In accordance with MDOC Policy Directive PD 05.01.130 ¶ J(2), Smead prepared plaintiff's December 2, 2008 security classification screen. The policy requires that prisoners be rescreened for security classification by staff using Security Classification Screen - Review form (CSJ-481) if the prisoner is being transferred to a different CFA facility and it has been at least 60 calendar days since the prior screening. (Policy Directive PD 05.01.130 ¶ J(2), docket # 10-2, ID# 95). Plaintiff's most recent security classification had been

completed on October 1, 2008, and plaintiff was classified as follows: confinement level 2, management level 1, true security level 2, and actual placement level 2. (docket # 1-8, ID# 44; docket # 28-1, ID# 207). Because at least 60 days had passed since plaintiff's earlier screening, RUO Smead completed a new CSJ-481. Smead gave plaintiff the identical security classification he had received in October. (docket # 1-8, ID# 45; Smead Aff. ¶¶ 5,6; docket # 28-1, ID# 208). Smead had no knowledge of plaintiff's grievance. (Smead Aff. ¶ 8). Other than preparing the CSJ-481, defendant Smead had no involvement in plaintiff's lateral transfer to another prison at the same security level. (Smead Aff. ¶ 9). On December 4, 2008, plaintiff was transferred from LRF to the Straits Correctional Facility (KTF). (Plf. Decl. ¶ 19, docket # 28-2, ID# 232).

Corrections Officer Sherrod was not involved in plaintiff's transfer. As a corrections officer, Sherrod had no authority to order a prisoner's transfer from one facility to another. Sherrod did not determine which inmates were transferred or when they were transferred. (Sherrod Aff. ¶¶ 5, 6; Benson Aff. ¶¶ 3, 4).

On December 8, 2008 Captain Evans wrote the Step I grievance response denying plaintiff's grievance. Sherrod had acknowledged asking for and receiving the magazines, but denied reading them on duty. Devries recalled Sherrod asking for and receiving the magazines. Librarian Harris stated that it was not unusual for officers to request magazines. Evans instructed Harris not to hand out magazines to employees. Evans found no evidence that plaintiff had been treated inhumanely or was told to "shut up." (docket # 1-1, ID# 13; docket # 28-1, ID# 223). Plaintiff pursued an unsuccessful Step II and III appeals (docket # 1-1, ID#s 18, 19; docket # 28-1, ID#s 227, 228).

On December 28, 2010, plaintiff filed this lawsuit.

**Discussion**

1. Mootness

Plaintiff is an inmate at the Lakeland Correctional Facility (ARF). Defendant Sherrod is employed by the State of Michigan at LRF, and defendant Smead is retired. Plaintiff's requests for injunctive and declaratory relief are moot. *See Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996).

2. Eleventh Amendment Immunity

All plaintiff's claims for damages against defendants in their official capacities are barred by Eleventh Amendment immunity. The Eleventh Amendment bars suit in federal court against a state and its departments or agencies unless the state has waived its sovereign immunity or unequivocally consented to be sued. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). The State of Michigan has not consented to civil rights suits in federal court. *See Johnson v. Dellatifia*, 357 F.3d 539, 545 (6th Cir. 2004). A suit against a state officer in his or her official capacity is simply another way of pleading an action against the state. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *Grinter v. Knight*, 532 F.3d 567, 572 (6th Cir. 2008). Furthermore, States and their departments are not "persons" within the meaning of 42 U.S.C. § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. at 71. Defendants are entitled to dismissal with prejudice of all plaintiff's claims for monetary damages against them in their official capacities.

3.   First Amendment

On summary judgment, a plaintiff asserting a First Amendment retaliation[2] claim must present evidentiary proof on which a reasonable trier of fact could find (1) that the plaintiff had engaged in conduct protected by the First Amendment; (2) that an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from engaging in that conduct; and (3) that the adverse action taken against the plaintiff was motivated, at least in part, by the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (*en banc*). The plaintiff has the burden of proof on all three elements. *See, e.g.*, *Murray v. Evert*, 84 F. App'x 553, 556 (6th Cir. 2003).

"The first element [plaintiff] must establish for his retaliation claim[s] [are] that he was engaged in conduct protected by the First Amendment." *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010). The Sixth Circuit recognizes that a prisoner's filing of a grievance can constitute protected conduct. *See Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). Frivolous grievances are not protected conduct. *See Hill v. Lappin*, 630 F.3d at 472; *Lockett v. Suardini*, 526 F.3d 866, 874 (6th Cir. 2008) (calling a hearing officer a "foul and corrupted bitch" was not protected conduct); *Herron v. Harrison*, 203 F.3d at 415. It is doubtful that plaintiff's grievance qualifies for constitutional protection. Most of the grievance was directed to the conduct of staff that did not abridge plaintiff's rights in the least. The issues whether magazines can be circulated before they are logged in, whether staff members are allowed to read during working hours, and whether senior staff provide a bad example to probationary staff are no business of plaintiff. He is a prisoner, not

---

[2]"Retaliation claims by prisoners are prone to abuse since prisoners can claim retaliation for every decision they dislike." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996).

inspector general. The function of a grievance is to remedy a prisoner's complaint about his living conditions behind prison walls, not to air criticism of the guards' use of their time. MDOC policy allows a prisoner to submit a grievance regarding alleged violations of policy or procedure or unsatisfactory conditions of confinement "which directly affect the grievant." Policy Directive 03.02.130 ¶ E (eff. 7/9/2007). Neither the policy directive nor the Constitution grant prisoners a roving commission to offer abstract criticisms of staff performance. Thus, most of plaintiff's grievance was frivolous on its face. The complaint that he was told to "shut up" at least addresses an issue personal to plaintiff, although hardly one of constitutional magnitude. I will assume for analytical purposes that plaintiff engaged in protected conduct by filing a non-frivolous grievance at least with regard to this complaint.

The second element of a retaliation claim is an adverse action against plaintiff that would deter a person of ordinary firmness from engaging in the protected conduct. It is well established that "a prisoner is expected to endure more than the average citizen and enjoys no protected right to remain incarcerated in a given correctional facility." *Hix v. Tennessee Dep't of Corrections*, 196 F. App'x 350, 358 (6th Cir. 2006) (citing *Siggers-El v. Barlow*, 412 F.3d 693, 704 (6th Cir. 2005)). "[R]outine inconveniences of prison life [] do not constitute adverse action." *Reynolds-Bey v. Harris*, 428 F. App'x 493, 503 (6th Cir. 2011). Generally, a transfer to another prison "does not constitute an adverse action since a transfer is merely an ordinary incident of prison life." *Jones v. Caruso*, 421 F. App'x 550, 553 (6th Cir. 2011) (quoting *Siggers-El*, 412 F.3d at 704). "As such, an alleged retaliatory transfer ordinarily 'should be characterized as *de minimis* and dismissed at the summary judgment stage.'" *Jones*, 421 F. App'x at 553 (quoting *Siggers-El*, 412 F.3d at 703). Here, transferring plaintiff away from LRF to a different prison at the same security

classification level is not an action that would deter a prisoner of ordinary firmness. *See Thaddeus-X*, 175 F.3d at 396; *Jones*, 421 F. App'x at 553; *Hix*, 196 F. App'x at 358 (6th Cir. 2006); *see also Northington v. Armstrong*, No. 1:10-cv-424, 2011 WL 6967623, at * 6-7 (W.D. Mich. Aug. 12, 2011). Both prisons are level 2 facilities, the lowest custody level available to prisoners, such as plaintiff, serving life terms.[3]

Under the causation element of a prisoner's *prima facie* case for retaliation, the subjective motivation of the decisionmaker is at issue. "The third element of a First Amendment retaliation claim requires the plaintiff to prove a causal connection between the protected conduct and the adverse action. When assessing motive in the context of a summary judgment motion, bare allegations of malice do not suffice to establish a constitutional claim. This court has held that circumstantial evidence, like the timing of events or the disparate treatment of similarly situated individuals, is appropriate." *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 399-400 (6th Cir. 2010) (internal quotations and citations omitted). Plaintiff must demonstrate that his protected speech was a substantial or motivating factor in the adverse action taken by defendant. Specifically, plaintiff must point to specific, nonconclusory evidence reasonably linking his speech to the adverse action. *Rodgers v. Banks*, 344 F.3d 587, 602 (6th Cir. 2003). The Sixth Circuit has interpreted this inquiry to mean that a motivating factor is "essentially but-for cause-without which the action being challenged simply would not have been taken." *Vereecke*, 609 F.3d at 400 (quoting *Leonard v. Robinson*, 477 F.3d 347, 355 (6th Cir. 2007), and *Greene v. Barber*, 310 F.3d 889, 897 (6th Cir. 2002)). "Substantial case law from this circuit cautions about the permissibility of drawing an

---

[3] It is appropriate to note that in *Moilanen v. Berghuis, et al.,* 1:08-cv-368, plaintiff has sworn that he was subjected to intolerable levels of environmental tobacco smoke at LRF.

inference of causation from temporal proximity alone." *Vereecke*, 609 F.3d at 400; *see Tuttle v. Metropolitan Gov't of Nashville*, 474 F.3d 307, 321 (6th Cir. 2007) ("The law is clear that temporal proximity standing alone, is insufficient to establish a causal connection for a retaliation claim."). Plaintiff has not presented evidence sufficient to support a causal connection between his protected conduct and defendants' actions. Neither of these defendants were responsible for plaintiff's transfer. RUM Smead completed the updated CSJ-481 required by MDOC policy. He did not order plaintiff's transfer, and there is not a shred of evidence that he knew of the grievance. Corrections Officer Sherrod could not possibly have ordered plaintiff's transfer. I find that defendants are entitled to judgment in their favor as a matter of law on plaintiff's First Amendment claims.

### Recommended Disposition

For the foregoing reasons, I recommend that plaintiff's claims for injunctive and declaratory relief be dismissed because they are moot. I further recommend that plaintiff's claims for damages against defendants in their official capacities be dismissed with prejudice because they are barred by Eleventh Amendment immunity. I further recommend that defendants' motion for summary judgment (docket # 9) be granted, and that a judgment be entered in defendants' favor on all plaintiff's claims for damages against defendants in their individual capacities.


Dated: March 20, 2012          /s/ Joseph G. Scoville
                               United States Magistrate Judge


### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All

objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely and specific objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir.), *cert. denied*, 129 S. Ct. 752 (2008); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).  General objections do not suffice.  *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *see Frontier*, 454 F.3d at 596-97; *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006).